**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| FOREVER GREEN, INC.; UNITS FRANCHISING GROUP, INC.; UNITS MOBILE STORAGE OF CHARLESTON, INC., UNITS MOBILE STORAGE OF GREENVILLE, INC., UNITS MOVING AND PORTABLE STORAGE OF CHARLOTTE, INC., EXTRA ROOM SELF STORAGE, LLC; EXTRA ROOM SELF STORAGE CYPRESS GARDENS, LLC; EXTRA ROOM SELF STORAGE MYRTLE BEACH, LLC; EXTRA ROOM SELF STORAGE UNIVERSITY BLVD., LLC, AND MOUNT PLEASANT BOAT & RV STORAGE LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No.: 4:21-cv-1090 **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| AVATARA, LLC, Serve Registered Agent: | ) ) ) | |
| Matthew A. Jacober 7701 Forsyth Blvd., Suite 500 St. Louis, MO 63105 | ) ) ) ) | |
| Defendant. | ) ) ) | |

**VERIFIED COMPLAINT**

This action is brought by Plaintiffs Forever Green, Inc., UNITS Franchising Group, Inc.,

UNITS Mobile Storage of Charleston, Inc., UNITS Mobile Storage of Greenville, Inc., UNITS

Moving and Portable Storage of Charlotte, Inc., Extra Room Self Storage, LLC, Extra Room Self

Storage Cypress Gardens, LLC, Extra Room Self Storage, Myrtle Beach, LLC, Extra Room Self

Storage University Blvd., LLC and Mount Pleasant Boat & RV Storage LLC (collectively

"Plaintiffs"), to recover their data, and to recover damages, from Defendant Avatara, LLC ("Defendant" or "Avatara") for the claims stated herein.

## PARTIES AND JURISDICTION

1.      Plaintiff Forever Green, Inc. ("Forever Green") is a corporation incorporated under the laws of the State of South Carolina, with its principal place of business located in Daniel Island, South Carolina.

2.      Plaintiff UNITS Franchising Group, Inc. ("UNITS") is a corporation incorporated under the laws of the State of South Carolina, with its principal place of business located in Daniel Island, South Carolina.

3.      Plaintiff UNITS Mobile Storage of Charleston, Inc., is a corporation incorporated under the laws of the State of South Carolina, with its principal place of business located in Charleston, South Carolina.

4.      Plaintiff UNITS Mobile Storage of Greenville, Inc., is a corporation incorporated under the laws of the State of South Carolina, with its principal place of business located in Greenville, South Carolina.

5.      Plaintiff UNITS Moving and Portable Storage of Charlotte, Inc., is a corporation incorporated under the laws of North Carolina, with its principal place of business located in Charlotte, North Carolina.

6.      Plaintiff Extra Room Self Storage, LLC is a limited liability company formed under the laws of the State of South Carolina, with its principal place of business located in Daniel Island, South Carolina. None of the members of this limited liability company are residents of the State of Missouri.

5263669.3

7.     Plaintiff Extra Room Self Storage Cypress Gardens, LLC is a limited liability company formed under the laws of the State of South Carolina, with its principal place of business located in Daniel Island, South Carolina. None of the members of this limited liability company are residents of the State of Missouri.

8.     Plaintiff Extra Room Self Storage, Myrtle Beach LLC is a limited liability company formed under the laws of the State of South Carolina, with its principal place of business located in Daniel Island, South Carolina. None of the members of this limited liability company are residents of the State of Missouri.

9.     Plaintiff Extra Room Self Storage University Blvd., LLC is a limited liability company formed under the laws of the State of South Carolina, with its principal place of business located in Daniel Island, South Carolina.  None of the members of this limited liability company are residents of the State of Missouri.

10.     Plaintiff Mount Pleasant Boat and RV Storage LLC is a limited liability company formed under the laws of the State of South Carolina, with its principal place of business located in Daniel Island, South Carolina.

11.     Avatara is a limited liability company organized and existing under the laws of the State of Missouri, with its principal place of business located in St. Louis, Missouri.

12.     Upon information and belief, the managing member of Avatara is Robert McCormick, who is a resident of St. Louis, Missouri.

13.     This Court has diversity jurisdiction over the parties and all causes of action pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14.     This Court also has subject matter jurisdiction of this controversy based upon violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*

15.     Venue is proper in this judicial district and division pursuant to 28 U.S.C. § 1391, as the acts or omissions giving rise to this action occurred, in whole or for the most part, in St. Louis, Missouri.

16.     This Court may exercise personal jurisdiction over the parties to this dispute because Avatara is domiciled and has its principal place of business in Missouri.

## FACTUAL BACKGROUND

17.     Plaintiffs consist of multiple businesses including a landscaping and lawn care service known as "Forever Green," storage facilities, and an RV and boat storage facility.

18.     As the primary business, Forever Green provides back office services for all of the other Plaintiffs collectively, which includes computer systems, human resources, and accounting, among other services.

19.     UNITS Franchising Group serves as the franchisor for over 60 franchisees nationwide, which means it is responsible for housing data related to each of these franchises.

20.     Avatara is in the business of developing and providing IT solutions such as private data center platforms and technology security through cloud computing services on a virtual platform called "CompleteCloud" (the "Platform").

21.     Forever Green contracted with Avatara on behalf of itself, and all of the other Plaintiffs, because Forever Green provides the computer systems for all of the other business entities identified as Plaintiffs herein.

22.     Avatara understood that providing computer services to Forever Green included providing these services to the other Plaintiffs.

4

### Avatara's Agreement

23.     On or about June 22, 2020, Forever Green entered into a contract (the "Agreement"), pursuant to which Avatara agreed to develop technology solutions for Forever Green, and to provide cloud computing services to Plaintiffs on the CompleteCloud Platform (the "Platform"). The Agreement, which was drafted entirely by Avatara, is attached hereto and incorporated herein by reference as Exhibit 1.

24.     Avatara agreed to provide Forever Green with certain software, hardware, and IT infrastructure essential to Plaintiffs' business operations, including without limitation the following:

   a.   access to and use of the CompleteCloud Platform by means of an Internet or other connection;

   b.   servers to host Plaintiffs' software programs and data, including file sharing, email, and business software;

   c.   unlimited file server storage for business documents and files; and

   d.   personal and corporate infrastructure software licenses including: Microsoft Operating System, Microsoft Office Business, Microsoft Exchange, Microsoft Active Directory and Fileshare, and Microsoft SQL Server.

25.     In exchange for an extra monthly fee, Avatara agreed to provide Forever Green with a "Productivity Bundle," including secure file-sharing and the ability to search and archive emails.

26.     In addition to promising performance, inherent in any contract, Avatara also promised to provide a secure hosting environment, including without limitation the following:

   a.   "enterprise level security measures," including "site and server firewalls, intrusion detection and system monitoring tools, current anti-spam and antimalware software, and high level physical security including video

5

surveillance, biometric access, and controlled key system for locked server cabinets";

b.  backups of all data in a "secondary data center";

c.  rolling 30-day backups of file server data with two daily recovery points (one overnight and one midday); and

d.  rolling 30-day backups of database and Exchange (email) servers, including incremental backups every 15 minutes and two full backup recovery points per day.

27.     In exchange for yet another additional monthly fee, Avatara also agreed to provide Forever Green and other Plaintiffs with the "CompleteCloud Managed Security Bundle," including without limitation the following:

a.  "DNS Web and Content Filtering provides network security that proactively protects users from advanced malware, botnets and phishing attacks";

b.  "Hosted Based Intrusion Detection" that "provides an additional layer of defense that comes with a 24x7 Security Operations Center (SOC) equipped with correlation engines housing Petabytes of data"; and

c.  Email management software to encrypt inbound and outbound email and protect against "both targeted attacks and unknown threats."

28.     Although Forever Green and the other Plaintiffs in this case had to provide access to their data and computer systems for Avatara to provide the services it was contracted to provide, nothing in the Agreement transferred any right, title, or ownership of Plaintiffs' data provided or later housed on the Platform to Avatara, or granted Avatara the right to withhold or control such data.

29.     As the drafter of the Agreement, Avatara included one-sided provisions that ensured once a client entered into the Agreement, it could not get out regardless of how poorly Avatara performed.

6

5263669.3

30.     Although the Agreement allowed for termination in the event of a "material breach," it narrowly defined "material breach" as failing "to meet the performance levels set forth in" the Agreement for *two full months*.

31.     This term attempts to prevent customers from establishing a material breach of the Agreement, no matter how poorly Avatara's system performs and no matter how much data is lost, provided some part of the Platform is functioning during a two-month period of time.

32.     As fully known by Avatara, and in fact used by Avatara to promote its services, Plaintiffs are entirely reliant upon the stability of their computer systems and the preservation of their electronically stored data, including emails, accounting systems, calendars, customer service records, etc., and could not survive an outage of two months, even if that outage was intermittent.

33.     Although Avatara claims to be a premier provider of cloud-based technology services, its Agreement is written to disclaim any responsibility for providing any level of service, let alone an acceptable level of service.

34.     Specifically, Avatara's Agreement purportedly disclaims and "does not warrant" any of the following:

    a.   "the performance or results customer may obtain by using the CompleteCloud Platform";

    b.   "that the functions contained in the CompleteCloud Platform will meet customer's requirements"; or

    c.   "[that] the operation of the CompleteCloud Platform will be uninterrupted or error-free."

35.     The Agreement contains an illusory "termination for convenience" provision that purports to allow a client to "terminate for convenience" upon 30 days' written notice and payment

7

of a "termination penalty" equal to the *entire amount owed for the remainder of the contract term*, with no discount for the present value of money.

36.     In effect, the Agreement attempts to preclude the right to terminate the Agreement or seek redress of significant material breaches of the Agreement, no matter how poorly Avatara performs, no matter how much of the clients' data is lost, and no matter how much damage Avatara causes to the customer's business.

### Avatara's Failure to Perform

37.     Forever Green executed the Agreement with Avatara on June 22, 2020.

38.     After months of planning and preparation for the transition to Avatara's cloud-based platform, Avatara transitioned Forever Green to the Platform in October 2020.

39.     From the beginning, up to the present day, the Platform has not operated in accordance with the terms of the Agreement.

40.     From the outset, Forever Green experienced significant and ongoing failures of the Platform, including but by no means limited to the following:

a. The Platform is slow and regularly freezes or drops service, resulting in, among other things, frequent disconnection from and/or disruption to the Platform (at times as frequently as numerous times per hour), Microsoft Exchange, video conferences, Microsoft programs, the internet, emails, and other software;

b. Key features regularly fail, including basic email functionality, sending and opening files, printing, connectivity to the Platform, and software updates; and

c. The Platform was not correctly implemented, in that, among other things, documents and emails were not transferred and/or were lost, incoming emails

are repeatedly blocked, applications are not supported and/or functional, and remote employees are unable to access the Platform.

41.     On February 15, 2021, Forever Green provided Avatara with a formal, written Notice of Default pursuant to §10.1 of the Agreement.  A copy of this Notice of Default is attached hereto and incorporated by reference as Exhibit 2.

42.     Forever Green sought to amicably resolve the situation.

43.     Avatara's response to the February 15, 2021 Notice of Default was to attribute the failures to unidentified "outside problems" and to dismiss Forever Green's list of significant and ongoing failures in the Platform as "kinks."

44.     Avatara failed to take any corrective action, and has refused to correct the deficiencies in the performance of the Platform, and Plaintiffs continue to experience a lack of functionality and lost data.

45.     In an effort to mitigate its losses and contain the ongoing damage to Plaintiffs' businesses caused by Avatara, Forever Green and its counsel made repeated requests to Avatara for access to Plaintiff's own data for the purpose of moving it to a more reliable platform.

46.     As the significant problems with the Platform continued, including dropped calls and videoconferences, disconnections from emails and missing data, inability to print, disappearing documents, etc., Forever Green requested that the parties discuss an orderly plan to unwind the relationship so that Forever Green could transition to a different provider.

47.     Avatara did not respond to this request.

### Avatara's "Catastrophic Failure"

48.     Beginning on June 21, 2021, Plaintiffs lost access to email and online files for several days.

49.     Avatara employee Dan King admitted to Doug Lionberger, Forever Green's Director of IT, and Gregory Coop, Forever Green's Chief Financial Officer and Controller, that Avatara had suffered a "catastrophic failure" that affected "two handfuls" of clients, including Plaintiffs.

50.     Mr. King further stated that the outage was due to multiple disk (storage) failure.

51.     Avatara, through Mr. King, committed to restore all data by June 24, 2021.

52.     Mr. King continued to revise the estimated restoration of email and file sharing to a later date.

53.     Portions of email and file-sharing finally came back online late in the evening on June 27, 2021.

54.     Avatara assured Plaintiffs that all email and data would be restored and that any inbound emails would be delivered once the system came back online.

55.     Avatara's representations were false because all email and data have not been restored, and inbound emails were not delivered after the system came back online.

56.     If Avatara had been meeting its contractual obligations—specifically, if Avatara had been making backups of Plaintiffs' data as promised in the Agreement—it should have been able to fully restore all of Plaintiffs' stored files and emails immediately.

57.     Avatara suggested Plaintiffs engage in the ridiculous task of identifying which emails they did not receive or that were missing from their archives so that Avatara could try to restore them.

58.     Avatara failed to restore Forever Green's data in a timely or commercially reasonable manner, and certain data and functionalities have yet to be restored.

10

59.     The Platform's system and connectivity failures, lack of core functionality, and inability to support routine business functions constitute substantial failures of the Platform.

60.     The extended system outage and Avatara's failure or inability to restore lost data and functionality indicate serious problems with the architecture of the Platform, including but not limited to a lack of redundancy, which violates both long-established industry norms, as well as Avatara's obligation under the Agreement to provide twice-daily backups of Plaintiffs' data.

61.     Avatara has failed and/or refused to resolve the foregoing failures, despite notice and numerous requests from Forever Green or its counsel.

62.     The foregoing failures by Avatara and of the Platform constitute numerous, ongoing, and repeated material breaches of Avatara's contractual obligations under the Agreement.

63.     In an effort to mitigate its losses and contain the ongoing damage to Plaintiffs' businesses caused by Avatara, Forever Green and its counsel have made repeated requests to Avatara for access to *its own data* for the purpose of moving it to a more reliable platform.

64.     Avatara has ignored and refused Forever Green's requests, in spite of the fact that Avatara has no claim to Plaintiffs' data.

65.     To date, without authorization, Avatara continues to hold Plaintiffs' data hostage—refusing to release the data unless Forever Green pays the extortionist "termination for convenience" fee.

66.     Avatara's willful failure to perform under the Agreement, and its refusal to release Plaintiffs' data, has caused Plaintiffs to incur significant monetary damages, including but not limited to the amounts paid under the Agreement, and has resulted in lost business, lost employee productivity, and substantial damages to brand image and business reputation, in amounts to be shown at trial.

5263669.3

## COUNT I
### (Action for Replevin under Mo. Rev. Stat. Chapter 533)

67.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

68.     In conjunction with Avatara's obligation to provide reliable cloud computing services to Forever Green, Forever Green provided access to Avatara to all of Plaintiffs' data including email servers, shared files, PST files, and all data on Forever Green's servers.

69.     Avatara currently has possession of Plaintiffs' data, PST files, emails, shared files, accounting and billing records, customer records, etc.

70.     In spite of Forever Green's multiple demands for the return of Plaintiffs' data, Avatara has refused to allow Forever Green control of its own data, or to allow for the orderly transition of Plaintiffs' data to another provider.

71.     Plaintiffs are the rightful owner of their own data, which contains information critical to their ongoing businesses.

72.     Avatara has no rightful claim to Plaintiffs' data.

73.     The only value of Plaintiffs' data to Avatara is as a ransom to try to force Forever Green to pay money that Forever Green does not owe, but Plaintiffs' data is of incalculable value to Plaintiffs, which Avatara most certainly knows.

74.     This Court should set a minimum bond to satisfy this element of Chapter 533 of the Missouri Revised Statutes, recognizing that Avatara has no claim to Plaintiffs' data and Avatara will suffer no harm if this Court orders transfer of possession of Plaintiffs' data to Plaintiffs immediately.

75.     Plaintiffs on the other hand have suffered and will continue to suffer irreparable harm to their business operations and reputation, and their future viability is at risk due to Avatara's refusal to transfer Plaintiffs' data to Forever Green's control immediately.

12

76.     Plaintiffs' data has not been seized by any legal process.

77.     Plaintiffs' data is unique and cannot be replicated or replaced.

78.     Plaintiffs risk continued harm to their businesses, and to the data itself, if this Court does not order Avatara to transfer Plaintiffs' data immediately.

79.     Plaintiffs' data is necessary to the proper functioning of their business, their customer relationships, and their ability to survive.

80.     The allegations set forth herein are verified by Affidavit attached hereto and incorporated herein by reference as Exhibit 3 to meet the requirements of Missouri Revised Statute Chapter 533.

### COUNT II
### (Conversion)

81.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

82.     Plaintiffs are the rightful owners of the data described herein and are entitled to immediate possession of such data.

83.     Avatara took possession of Plaintiffs' data with the intent to exercise control over it, and in spite of Plaintiffs' request for release of their data on July 7, 2021, Avatara has not relinquished control over Plaintiffs' data.

84.     After not receiving a response from Avatara regarding the return of Plaintiffs' data, on July 20, 2021, Plaintiffs' counsel made demand for the return of the data to Forever Green.

85.     But, Avatara refused to relinquish control of Plaintiffs' data, and continues to refuse to release Plaintiffs' data as of the filing of this lawsuit.

86.     Plaintiffs have been damaged by Avatara's conduct through their inability to obtain full access to transfer their data to a more reliable provider, through damaged customer

13

relationships, through missing electronically stored information, and disruption in their business operations, and the requirement that they file a lawsuit to obtain access to their own data.

87.     As a direct and proximate result of Avatara's conversion of Plaintiffs' data, Plaintiffs have suffered damages in an amount to be determined by a trier of fact.

88.     Avatara acted maliciously, willfully, wantonly, intentionally and recklessly in disregarding the rights of Plaintiffs in an attempt to extract a ransom for Plaintiffs' data.

89.     Plaintiffs will seek leave of Court to add punitive damages to the list of remedies it is entitled to recover as allowed by Missouri statute.

## COUNT III
### (Violation of the Missouri Computer Tampering Act)

90.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

91.     Plaintiffs are the owners of the computer data, the computer programs, and the systems currently held by Avatara against Plaintiffs' instructions.

92.     Avatara without authorization and in direct contravention of Plaintiffs' demands, has denied Plaintiffs full access to and the right to transfer their data, programs, and systems, and by doing so has taken control of Plaintiffs' data, programs, and supporting systems residing or existing internal or external to a computer, computer system, or network in violation of Mo. Rev. Stat. Section 569.095(3).

93.     Avatara received, retained, used and/or disclosed data they knew or should have known was obtained in violation of the Missouri Computer Tampering Act, which constitutes a violation of Mo. Rev. Stat. Section 569.095(6).

94.     Avatara without authorization accessed and continues to withhold Plaintiffs' data, programs, and corresponding systems residing or existing internal or external to a computer, computer system or network in violation of Mo. Rev. Stat. Section 569.095(1).

14

95.     By its conduct, Avatara has without authorization denied or caused the denial of computer system services to an authorized user of such computer system services, which is owned by, and exists solely for the benefit of Plaintiffs, in violation of Mo. Rev. Stat. Section 569.099(2).

96.     By retaining control over and refusing to allow transfer of Plaintiffs' data immediately, Avatara modified, destroyed, damaged, or took data storage devices used or intended to be used in a computer, computer system, or computer network in violation of Mo. Rev. Stat. Section 569.097(1).

97.     As a result of Avatara's conduct, Plaintiffs have sustained damages in an amount to be proven at trial including but not limited to lost profits, actual damages, non-economic and economic damages.

98.     In addition, Plaintiffs have been forced to incur attorney's fees to prosecute these claims and are therefore entitled to recover its attorney's fees and costs in bringing this action pursuant to Mo. Rev. Stat. Section 537.525(2).

99.     Avatara acted maliciously, willfully, wantonly, intentionally and recklessly in disregarding the rights of Plaintiffs in an attempt to extract a ransom for Plaintiffs' data.

100.    Plaintiffs will seek leave of Court to add punitive damages to the list of remedies it is entitled to recover as allowed by Missouri statute.

## COUNT IV
**(Violation of the Computer Fraud and Abuse Act, 18 U.S.C § 1030, *et seq.*)**

101.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

102.    Avatara knowingly exceeded its authorized access to Plaintiffs' data by refusing Plaintiffs' possession and control of Plaintiffs' own data.

103.    Avatara's conduct has prevented Plaintiffs from having full control over their own data.

5263669.3

104.    As a result of Avatara's conduct, Plaintiffs have been forced to develop backup systems of their own, and to engage technology support to assist them in recreating information that should have been stored by Avatara, and readily accessible by Plaintiffs, all to the detriment of Plaintiffs' businesses.

105.    Plaintiffs continue to incur damages in an effort to continue their business and mitigate damage to their customer relationships.

106.    As a result of Avatara's conduct, Plaintiffs have sustained damages in an amount to be proven at trial including but not limited to lost profits, actual damages, non-economic and economic damages.

107.    Avatara acted maliciously, willfully, wantonly, intentionally and recklessly in disregarding the rights of Plaintiffs in an attempt to extract a ransom for Plaintiffs' data.

108.    Plaintiffs will seek leave of Court to add punitive damages to the list of remedies it is entitled to recover as allowed by Missouri statute.

## COUNT V
### (Violation of the Stored Communications Act, 18 U.S.C. § 2701)

109.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

110.    Avatara has intentionally exceeded its authorization to access Plaintiffs' software and systems, and thereby obtained and prevented authorized access to Plaintiffs to their own data and emails, while in electronic storage, in violation of the Stored Communications Act.

111.    As a direct and proximate result of Avatara's violation of the Stored Communications Act, Plaintiffs have suffered damages, as set forth hereinabove and in an amount to be proven at trial.

## COUNT VI
### (Breach of Contract)

112.    Forever Green incorporates the foregoing allegations as if fully set forth herein.

113.    Forever Green and Avatara entered into the Agreement whereby Avatara agreed to provide outsourced technology services on a cloud-based computing system for Forever Green and other Plaintiffs in exchange for a substantial sum.

114.    Pursuant to the terms of the Agreement, Avatara agreed to provide Forever Green access to and use of the Platform, to install and maintain servers and host Plaintiffs' software and data, and to provide support to the hosted environment.

115.    Avatara's obligations included backup copies of all of Plaintiffs' data at least twice daily to prevent the loss of data in the event of a system failure.

116.    Avatara materially breached the Agreement, as well as its duty of good faith and fair dealing, in its failure to provide an acceptable level of service, or a usable Platform for Plaintiff's systems, as described herein.

117.    Avatara has failed and/or refused to resolve the system failures, to restore Plaintiffs' data or, to provide access to Plaintiffs' data as required under the Agreement.

118.    Forever Green has performed all of its obligations under the Agreement and has not breached the Agreement.

119.    As a direct and proximate result of Avatara's breach of contract and of its duty of good faith and fair dealing, Plaintiffs have been injured in an amount to be determined by a trier of fact.

## COUNT VII
### (Negligent Misrepresentation)

120.    Forever Green incorporates the foregoing allegations as if fully set forth herein.

17

5263669.3

121.   Avatara supplied information to Forever Green in the course of its business that it could support the IT service needs of Plaintiffs, that Plaintiffs would have access to and use of the Platform for such purposes, and that it would provide hosting and support services in connection with the same, and that Avatara would ensure the system performed at an acceptable level.

122.   Avatara supplied such information to Forever Green for purposes of inducing Forever Green to enter into the Agreement.

123.   The representations made by Avatara to Forever Green were material to Forever Green's decision to enter into the Agreement with Avatara to provide the back office computer services to all of the Plaintiffs on a cloud-based Platform.

124.   Because of a failure by Avatara to exercise reasonable care, the information it provided to Forever Green was false.

125.   Forever Green justifiably relied on the information and representations made by Avatara.

126.   As a direct and proximate result of such justifiable reliance on Avatara's false information, Forever Green has suffered a pecuniary loss, as set forth hereinabove and in an amount to be proven at trial.

## COUNT VIII
### (Fraudulent Inducement)

127.   Forever Green incorporates the foregoing allegations as if fully set forth herein.

128.   Avatara represented to Forever Green that it could support Forever Green's IT service needs, that Forever Green would have access to and use of the Platform for such purposes, and that it would provide hosting and support services in connection with the same and that Avatara would ensure the system performed at an acceptable level.

18

129.    For example, Avatara assured Forever Green that all of its data including its emails and share files would be backed up regularly, that no data would be lost, and that the system would be fully accessible to Plaintiffs with minimal disruption to Plaintiffs' business following the transition.

130.    Avatara's representations were material to Forever Green's decision to enter into the Agreement with Avatara.

131.    Avatara's representations were false and misleading in that Avatara was either unable or unwilling to deliver the promised services to Plaintiffs without significant disruption or failures.

132.    Upon information and belief, Avatara knew its representations were false, or else acted with reckless disregard of their truth or falsity.

133.    Upon information and belief, Avatara made such representations with the intention of Forever Green acting upon them in the manner reasonably contemplated.

134.    At the time Forever Green entered into the Agreement, it was not aware of the falsity of Avatara's representations.

135.    Forever Green rightfully relied upon Avatara's false representations when it entered into the Agreement.

136.    As a direct and proximate result of Avatara's fraudulent misrepresentation, Forever Green has suffered damages, as set forth hereinabove and in an amount to be proven at trial.

137.    Avatara acted maliciously, willfully, wantonly, intentionally and recklessly in disregarding the rights of Forever Green and the other Plaintiffs.

138.    Forever Green will seek leave of Court to add punitive damages to the list of remedies it is entitled to recover as required by Missouri statute.

## COUNT IX
### (Unjust Enrichment)

139.    Forever Green incorporates the foregoing allegations as if fully set forth herein.

140.    Avatara has been, and continues to be, enriched by the receipt of thousands of dollars paid by Forever Green.

141.    These payments were not gratuitous, and Avatara has been unfairly enriched by the payments at Forever Green's expense in that, as set forth herein, Avatara has failed to fulfill its obligations under the Agreement, and has not provided the basic functionality that Forever Green contracted to receive.

142.    It would be unjust to allow Avatara to retain the monies paid by Forever Green, when Avatara has not performed under the Agreement, and the Platform, has, since inception, substantially failed.

143.    Under the equitable principles of unjust enrichment, Forever Green is entitled to restitution of the monies it has paid to Avatara.

## COUNT X
### (Declaratory Judgment)

144.    Forever Green incorporates the foregoing allegations as if fully set forth herein.

145.    Forever Green is entitled to an Order of this Court finding and declaring that

a.  the Agreement is unenforceable because the early termination fee set forth in §10.1 is an unenforceable penalty rather than a liquidated damages clause;

b.  the Agreement is unenforceable because Avatara has attempted to disclaim all of its material obligations under the Agreement, such that its promises thereunder are illusory; and

20

c.  the Agreement is terminable at will because otherwise it has no fixed duration

and is perpetual.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief against Defendant Avatara:

(a)  An Order directing Avatara to immediately grant full access to Plaintiffs' data and

release of the data to the custody and control of Forever Green;

(b)  Judgment in favor of Plaintiffs and against Avatara for actual damages to be proven

at trial, including statutory damages for violations of statutes,

(c)  Judgment in favor of Forever Green and against Avatara for restitution of the

amount paid by Forever Green to Avatara under the Agreement;

(d)  An award of reasonable attorneys' fees and costs of this action;

(e)  An Order declaring that the Agreement is unenforceable and/or terminable at will;

and

(f)  Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Forever Green demands a jury trial on all issues triable to a jury.

Respectfully submitted,

**TUCKER ELLIS LLP**

By:____/s/ Sandra J. Wunderlich_____
   Sandra J. Wunderlich, #39019MO
   100 South 4th Street, Suite 600
   St. Louis, MO  63102
   Telephone: (314) 256-2550
   Facsimile: (314) 256-2549
   E-mail: sandra.wunderlich@tuckerellis.com

*Attorneys for Plaintiffs*

21

5263669.3

## **VERIFICATION OF COMPLAINT**

I, Holly G. McAlhany, Vice President of Forever Green, Inc., and each of the Plaintiffs named herein, am authorized to make this verification for and on behalf of all Plaintiffs.  I have read the foregoing Complaint and know its contents.  I have personal knowledge of the allegations, and am informed and believe that the matters stated in the foregoing document are true and correct to the best of my knowledge.

Executed this 30th day of August, 2021

Holly G. McAlhany

22

5263669.2